UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

BRIAN ARTHUR HILL,

Plaintiff,

vs.

PATRICK SCOTT, individually and in his professional capacity as a St. Paul Police Officer;

CATHERINE PAVLAK, individually and in her professional capacity as a St. Paul Police Officer;

MARK PIERCE, individually and in his professional capacity as a St. Paul Police Officer;

MICHAEL RASMUSSEN, individually and in his professional capacity as a St. Paul Police Officer;

JEROME STEFFEN, individually and in his professional capacity as a St. Paul Police Officer; and

CITY OF ST. PAUL.

Defendants.

**STIPULATION TO AMEND COMPLAINT**

**Jury Trial Demanded**

Case No. 01-1024 PAM/JGL

---

It is hereby stipulated and agreed by and among the parties through their respective undersigned counsel:

1. Plaintiff's Complaint may be amended as set forth in the First Amended Complaint attached hereto.

2. Plaintiff's Complaint may be considered to have been amended as of the date of its original filing.

AUG 21 2001
FILED
RICHARD D. SLETTEN, CLERK
JUDGMENT ENTD
DEPUTY CLERK

Dated: August 12, 2001

THE LAW OFFICE OF
WAYNE J. RICE, P.A.

Wayne J. Rice
Attorney Reg. No. 227110
2124 Dupont Avenue South
Minneapolis, MN 55405
(612) 874-1552
Fax (612) 879-0059

ATTORNEY FOR PLAINTIFF
BRIAN ARTHUR HILL

Dated: 8-16, 2001

OFFICE OF ST. PAUL
CITY ATTORNEY

James F.X. Jerskey
Assistant City Attorney
Attorney Reg. No. 220115
550 City Hall and Court House
15 West Kellogg Boulevard
(651) 266-8757

UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

BRIAN ARTHUR HILL,

Plaintiff,

vs.

PATRICK SCOTT, individually and in his professional capacity as a St. Paul Police Officer;

CATHERINE PAVLAK, individually and in her professional capacity as a St. Paul Police Officer;

MARK PIERCE, individually and in his professional capacity as a St. Paul Police Officer;

MICHAEL RASMUSSEN, individually and in his professional capacity as a St. Paul Police Officer;

JEROME STEFFEN, individually and in his professional capacity as a St. Paul Police Officer; and

CITY OF ST. PAUL.

Defendants.

**ORDER**

Case No. 01-1024 PAM/JGL

Upon stipulation of the parties, it is ORDERED that Plaintiff may amend his complaint as attached hereto and such amendments shall be considered to have been amended as of the date of the original filing.

Dated: Aug. 16, 2001

JONATHAN LEBEDOFF
United States Magistrate Judge

FILED ______
RICHARD D. SLETTEN, CLERK
JUDGMENT ENTD ______
DEPUTY CLERK ______

UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

BRIAN ARTHUR HILL,

Plaintiff,

vs.

PATRICK SCOTT, individually and in his professional capacity as a St. Paul Police Officer;

CATHERINE PAVLAK, individually and in her professional capacity as a St. Paul Police Officer;

MARK PIERCE, individually and in his professional capacity as a St. Paul Police Officer;

MICHAEL RASMUSSEN, individually and in his professional capacity as a St. Paul Police Officer;

JEROME STEFFEN, individually and in his professional capacity as a St. Paul Police Officer; and

CITY OF ST. PAUL.

Defendants.

**FIRST AMENDED COMPLAINT**

**Jury Trial Demanded**

Case No. 01-1024 PAM/JGL

---

## INTRODUCTION

1. This is a civil rights action for money damages brought pursuant to 42 U.S.C. §§ 1983 and 1988, and under the Fourth and Fourteenth Amendments to the United States Constitution, and under the common law of the State of Minnesota, against Patrick Scott, Catherine Pavlak, Mark Pierce, Michael Rasmussen and Jerome Steffen in their official and individual capacities and against the City of St. Paul.

## JURISDICTION AND VENUE

2. Jurisdiction over this controversy is conferred by 28 U.S.C. § 1331 as a civil action arising under the Constitution of the United States, and also by 28 U.S.C. § 1343 as an action to redress the deprivation under color of law of a right secured by the Constitution. Finally, this Court has jurisdiction over the state law claims pursuant to the doctrine of pendant jurisdiction and 28 U.S.C. § 1367. Venue is proper pursuant to 28 U.S.C. § 1391.

3. It is alleged that the individual police officer defendants made an unreasonable seizure of the person of Plaintiff, violating his rights under the Fourth and Fourteenth Amendments to the United States Constitution, and that these defendants assaulted and battered Plaintiff. It is further alleged that these violations and torts were committed as a result of policies and customs of the City of St. Paul.

## PARTIES

4. Plaintiff Brian Arthur Hill was, at all times relevant hereto, a resident of St. Paul, Minnesota, and of full age.

5. Defendant Patrick Scott, at all times relevant hereto, was a St. Paul Police Officer acting within the course and scope of his employment. Scott is being sued individually and in his official capacity.

6. Defendant Catherine Pavlak, at all times relevant hereto, was a St. Paul Police Officer acting within the course and scope of her employment. Pavlak is being sued individually and in her official capacity.

7. Defendant Mark Pierce, at all times relevant hereto, was a St. Paul Police Officer acting within the course and scope of his employment. Pierce is being sued individually and in his official capacity.

8. Defendant Michael Rasmussen, at all times relevant hereto, was a St. Paul Police Officer acting within the course and scope of his employment. Rasmussen is being sued individually and in his official capacity.

9. Defendant Jerome Steffen, at all times relevant hereto, was a St. Paul Police Officer acting within the course and scope of his employment. Steffen is being sued individually and in his official capacity.

10. Defendant City of St. Paul is a municipal corporation organized under the laws of the State of Minnesota. Said Defendant, at all time relevant hereto, employed Defendants Scott, Pavlak, Pierce, Rasmussen and Steffen (collectively "Defendant Officers"), and was responsible for their supervision, training and discipline.

11. At all times relevant hereto, Defendant Officers were acting under the color of law of the State of Minnesota and pursuant to their authority as police officers of the City of St. Paul.

## FACTS

### The Disability Placard

12. On June 15, 1999, Defendant Rasmussen, a Parking Enforcement Officer arrived at Plaintiff's place of residence at 1081 Hague Avenue in St. Paul. Upon information and belief, Rasmussen was responding to a report that had been made to the St. Paul Police Department that someone at Plaintiff's address was using a disability placard illegally.

13. When Rasmussen arrived, he noticed a car parked in front of Plaintiff's residence that displayed a disability placard. After Plaintiff noticed that Rasmussen was in front of his house, Plaintiff came outside to investigate. Rasmussen then told Plaintiff that the disability placard in the car had been reported stolen and demanded to see the person to whom the placard was issued.

14. When Plaintiff explained that the placard was issued to his father, Rasmussen said: "I doubt he's even alive. He's probably dead."

15. Plaintiff then allowed Rasmussen to view Plaintiff's father, Arthur Hill, through the window of his home. Plaintiff's father suffers from Alzheimer's Disease and, is cared for by Plaintiff. Rasmussen then demanded to enter Plaintiff's home to look at Mr. Hill. Plaintiff refused Rasmussen's request.

16. In response to Rasmussen's statement that the placard had been stolen, Plaintiff explained that he himself had reported the placard stolen, but that he had recently retrieved it as the result of a conciliation court action he brought against a former roommate who had stolen it. Plaintiff then offered to call the Department of Public Safety to clear up the matter.

17. Rasmussen refused this offer, instead stating that he had to have the placard immediately or he would direct that the car be towed.

18. Initially, Plaintiff refused to produce the placard. When Plaintiff's sister, Edna-Jo Hill, learned the car containing the placard, which belonged to her, might be towed, she came outside to move the car.

19. When Ms. Hill got in her car, she removed the placard from the dashboard and threw it to the ground. Plaintiff quickly retrieved the placard and went inside his house. At this point, Rasmussen called for backup.

20. Soon thereafter, Defendants Scott, Pavlak, Pierce and Steffen arrived at Plaintiff's residence.

21. Upon information and belief, after conferring with Rasmussen, Steffen and Pierce approached Plaintiff's door and asked to speak with Plaintiff. Plaintiff explained to Pierce that

he (Plaintiff) had reported the placard stolen and that he had only recently recovered it after going to conciliation court.

22. Upon information and belief, Pierce then spoke with Rasmussen. Rasmussen told Pierce that a replacement placard had been issued to Plaintiff and that it was not uncommon for a person to report a placard stolen to obtain another placard for personal use or use by other non-disabled persons. Rasmussen had no basis to believe that Plaintiff had done this.

23. Upon information and belief, Pierce and Steffen returned to Plaintiff's front door and asked Plaintiff to step outside to talk.

24. Plaintiff's previous interactions with St. Paul Police officers led him to believe that he might encounter violence if he left the safety of his house, so Plaintiff refused to leave the house, but continued to talk through the screen door.

25. Pierce then told Plaintiff that he needed to hand over the "stolen" placard or Ms. Hill's car would be towed. Although Plaintiff repeatedly invited Pierce to contact the Department of Public Safety, Pierce refused. Pierce also told Plaintiff that if he were to relinquish the placard, that would be the end of it.

26. Plaintiff reluctantly gave the placard to Pierce and requested a receipt for it so that when Plaintiff was forced to go to the Department of Public Safety to obtain another placard, he could prove that the St. Paul Police Department had taken this one. Pierce declined to do this, explaining that his recovery of the placard would be in the police report.

27. Shortly after Plaintiff turned over the placard to Pierce, Rasmussen entered onto Plaintiff's property to write a ticket for Ms. Hill's vehicle. Plaintiff then began yelling at Rasmussen to leave his private property. During this time, Plaintiff never left the porch of his house.

28. In response Rasmussen made statements to the effect: "You need to keep your fucking mouth shut. . . that's what got you in trouble last time," and "You know you've got a history."

**Officer Scott's False Statements**

29. Scott was very familiar with Plaintiff. Scott had arrested Plaintiff before and taken him to jail. Scott also knew that Plaintiff had sued him before. On the way to Plaintiff's residence on that day, Scott had even warned another officer that Plaintiff had previously sued him.

30. Upon arriving at Plaintiff's residence, Scott radioed to his dispatcher requesting any information concerning outstanding warrants on "Brian Hill." The dispatcher radioed Scott with the information that there was an outstanding warrant for a "Brian Walter Hill." The dispatcher also relayed Brian Walter Hill driver's license number and that he had green eyes.

31. Plaintiff is African-American and has brown eyes.

32. Scott knew that Plaintiff was African-American and did not have green eyes.

33. Even though Scott was aware of Brian Walter Hill's driver's license number, neither Scott nor any of the Defendant Officers requested to see Plaintiff's driver's license.

34. Plaintiff's middle name is Arthur. Neither Scott nor any of the other Defendant Officers ever asked Plaintiff his middle name.

35. Neither Scott nor any of the other Defendant Officers verified that Plaintiff was the person for whom a warrant was issued.

36. After Plaintiff's exchange with Officer Rasmussen, Defendant Scott yelled at Plaintiff: "Fuck you Hill. Get your black ass in the house or I'll arrest you on a warrant!"

Plaintiff protested that there was no warrant for his arrest. Plaintiff made this statement several times so that all of the officers could hear him.

37. Upon information and belief, Scott then told Pierce and the other officers present that there was a warrant for Plaintiff's arrest for driving without insurance.

38. At the time he made this statement, Defendant Scott knew that the outstanding warrant for Brian Walter Hill was not a warrant for Plaintiff's arrest, and that he was unaware of any other outstanding warrant for Plaintiff's arrest.

**The Arrest**

39. Without checking to ascertain the accuracy of Scott's statement, defendants Pierce, Pavlak and Steffen then approached Plaintiff's house and began to enter.

40. During this exchange, Plaintiff was on the porch of his house. When he saw that the officers were approaching his house, he quickly locked the screen door to the porch and tried to go inside his house. One of the officers then ripped the screen door open and grabbed the front door so that it could not close.

41. The officers then attempted to go through the front door. They had neither a warrant nor probable cause to do so.

42. A struggle ensued in Plaintiff's doorway in which Plaintiff suffered multiple injuries, including cuts, contusions and pain from being spayed with mace by Defendant Pavlak. One of the officers had Plaintiff by the arm while the other two were pinning Plaintiff with the door.

43. During the struggle, Ms. Hill became involved to try and stop the officers from breaking her brother's arm. When she asked one of the officers why they were assaulting Plaintiff, Pavlak said: "We have a warrant." When Ms. Hill demanded to see the warrant, Pavlak sprayed both Plaintiff and Ms. Hill.

44. When Plaintiff realized that Ms. Hill's 12-month old son was coming near the door, he ceased struggling.

45. As the officers began to take Plaintiff away, Ms. Hill, though half-blinded by the mace, asked Officer Pavlak what offense Plaintiff supposedly committed that supported an arrest warrant, Officer Pavlak told Ms. Hill that it was for "driving without insurance."

46. At that point, one of the other officers said: "He must not have shown up for a court date or something." Officer Pavlak then told Ms. Hill that they could throw her in jail too. When Ms. Hill remarked that she had charge of her 1-year old son and now her invalid father, Officer Pavlak threatened that the officers could arrest her for obstructing legal process.

47. The only resistance Plaintiff made was to attempt to close the door of his house when the Defendants Pavlak, Pierce and Steffen forcibly and illegally entered onto Plaintiff's porch, and to attempt to remain in his house by holding onto the door. The force used against Plaintiff under the circumstances was unnecessary, unreasonable and excessive.

48. The officers then placed Plaintiff in handcuffs very tightly.

49. On the way to the squad car, Plaintiff passed by Scott, Scott said: "Fuck you Hill. You better watch your back or you'll catch one." Plaintiff believes that Scott meant that Scott would hurt or kill him.

**Illegal Detention by Pavlak and Pierce**

50. Less than three minutes after Plaintiff was placed in custody, Pavlak and Pierce were informed either through their own inquiry through their in-car computer, by Officer Scott or by the dispatcher that no warrant existed for the arrest of Plaintiff.

51. The officers in the squad car 181, Pavlak and Pierce, became angry when they learned that they had no basis to arrest Plaintiff. When, just a few blocks from his home, Plaintiff asked

to be released, the officers informed him that he was under arrest for Obstruction of Legal Process with Force and would be taken to jail.

52. Pavlak and Pierce took Plaintiff to Regions Hospital, where he refused treatment for his injuries because he wanted to return home as soon as possible to care for his father.

53. The officers then took Plaintiff to the Ramsey County Jail Annex, where he stayed until he was released the following day at around 4:30 p.m.

54. At no time during the events described above was Plaintiff intoxicated, incapacitated, a threat to the safety of himself or others, or disorderly. Plaintiff had not committed any criminal offenses.

55. The Defendant Officers had no warrant for the arrest of Plaintiff, no probable cause for the arrest of Plaintiff and no legal cause or excuse to seize the person of Plaintiff.

56. At all times during the events described above, the Defendant Officers were engaged in a joint venture. The individual officers assisted each other in performing the various actions described and lent their physical presence and support and the authority of their office to each other during the said events.

57. As a direct and proximate result of the said acts of Defendant Officers, Plaintiff suffered the following injuries and damages:

a. Violation of his constitutional rights under the Fourth and Fourteenth Amendments to the United States Constitution to be free from unreasonable search and seizure of his person;

b. Loss of physical liberty;

c. Physical pain and suffering and emotional trauma and suffering, requiring the expenditure of money for treatment.

58. The actions of the Defendant Officers violated the following clearly established and well-settled federal constitutional rights of Plaintiff:

a. Freedom from unreasonable seizure of his person;

b. Freedom from the use of excessive, unreasonable and unjustified force against his person.

59. Defendants acted in bad faith and with reckless disregard and willful indifference to Plaintiff's rights and safety.

**COUNT I**
**42 U.S.C. § 1983 Unlawful Arrest Against All Defendant Officers**

Plaintiff realleges the above allegations as if hereinafter set forth in full and further states and alleges as follows:

60. Officer Scott either knowingly or with reckless indifference, made a false statement to the other Defendant Officers that a warrant existed for Plaintiff's arrest. Scott knew or should have known that this statement would proximately cause Plaintiff to be arrested by one or more of the other Defendant Officers.

61. Defendants Pavlak, Pierce and Steffen lacked probable cause to detain and arrest Plaintiff when they seized and arrested him, thereby depriving him of his right to be free from the unreasonable seizure of his person.

62. The arrest and detention of Plaintiff perpetrated by Scott and undertaken by Officers Pierce, Pavlak and Steffen was objectively unreasonable and the unlawfulness of this act was apparent in light of clearly established law.

63. As a result of the actions of Scott, Pavlak, Pierce, Rasmussen and Steffen, Plaintiff suffered the injuries and incurred the damages set forth above.

**COUNT II**
**42 U.S.C. § 1983 Unlawful Arrest Against Officers Pavlak and Pierce**

Plaintiff realleges the above allegations as if hereinafter set forth in full and further states and alleges as follows:

64. When on their way to the jail, Pavlak and Pierce learned that they had arrested Plaintiff without a warrant, they had an affirmative duty to release him immediately. When they continued to detain Plaintiff and transport him to the jail, they unlawfully arrested and detained Plaintiff, thereby depriving him of his right to be free from the unreasonable seizure of his person.

65. The arrest and detention of Plaintiff perpetrated by Pavlak and Pierce was objectively unreasonable and the unlawfulness of this act was apparent in light of clearly established law.

66. As a result of Pavlak and Pierce's actions, Plaintiff suffered the injuries and incurred the damages set forth above.

**COUNT III**
**42 U.S.C. § 1983 Excessive Force Claim Against Individual Defendants**

Plaintiff realleges the above allegations as if hereinafter set forth in full and further states and alleges as follows:

67. Defendants Pavlak, Pierce and Steffen used unreasonable force in light of the existing circumstances as judged from the perspective of a reasonable police officer at the scene when they grabbed, punched, kicked and maced Plaintiff, thereby depriving Plaintiff of his right under the Fourth Amendment to the United States Constitution to be free from unreasonable seizure.

68. Defendants Scott and Rasmussen either actively participated in the actions described in the immediately preceding paragraph or took no action to stop Defendants Pavlak, Pierce and Steffen from beating and injuring Plaintiff, when they had an opportunity to do so.

69. The Officer Defendants' actions and omissions were objectively unreasonable and the unlawfulness of such conduct was apparent in light of clearly established law.

70. As a result of the Officer Defendants' actions, and inaction, Plaintiff suffered injuries and incurred damages as set forth above.

**COUNT IV**
**42 U.S.C. § 1983 Against City of St. Paul**

Plaintiff realleges the above allegations as if hereinafter set forth in full and further states and alleges as follows:

71. Prior to June 15, 1999, Defendant Scott repeatedly demonstrated his willingness to violate the law relating to the arrest and detention of persons within the City. The City of St. Paul knew or should have known of Scott's propensity to violate the law in this manner.

72. It was the policy and/or custom of the City of St. Paul to inadequately supervise, train and discipline its police officers, including Scott, thereby failing to adequately discourage further constitutional violations on the part of its police officers. The City of St. Paul did not require appropriate in-service training or re-training of officers who were known to have engaged in police misconduct.

73. By failing to adequately supervise, train and discipline its officers, the City of St. Paul encouraged and implicitly authorized the Defendant Officers to forcibly seize Plaintiff without probable cause or a warrant, and to detain, beat, mace and injure Plaintiff, thereby depriving him of his right to freedom from unreasonable seizure contrary to the Fourth Amendment to the United States Constitution.

74. The above-described policies and/or customs demonstrated a deliberate indifference on the part of policymakers of the City of St. Paul to the constitutional rights of persons within the City, and were cause of the violations of Plaintiff's rights herein.

75. As a result of Defendant City of St. Paul's failure to adequately supervise, train and discipline Defendant Officers, Plaintiff sustained the injuries and incurred the damages as set forth above.

**COUNT V**
**Battery**

Plaintiff realleges the above allegations as if hereinafter set forth in full and further states and alleges as follows:

76. When Defendants Pavlak, Pierce and Steffen, beat Plaintiff, shut his arm in the door and maced him, these defendants intentionally and without permission caused harmful contact with Plaintiff.

77. As a result of the Defendant Officers' actions, Plaintiff sustained injuries and incurred damages as set forth above.

**COUNT VI**
**Assault**

Plaintiff realleges the above allegations as if hereinafter set forth in full and further states and alleges as follows:

78. When Defendants Pavlak, Pierce and Steffen intentionally seized, detained and arrested Plaintiff, these Defendants created the reasonable apprehension or fear that a battery would occur.

79. As a result of Defendants Pavlak, Pierce and Steffen's actions, Plaintiff sustained injuries and incurred damages as set forth above.

**COUNT VII**
**False Arrest**

Plaintiff realleges the above allegations as if hereinafter set forth in full and further states and alleges as follows:

80. Defendants Pavlak, Pierce and Steffen unlawfully seized, arrested and detained Plaintiff without probable cause and without a lawful warrant.

81. Defendant Scott actively participated in the false arrest by either false information either knowingly or with reckless indifference to the other Defendant Officers concerning the existence of a warrant for Plaintiff's arrest.

82. Defendant Rasmussen either actively participated in or failed to take action to stop the other Officer Defendants from falsely arresting Plaintiff.

83. As a result of the Defendant Officers actions, Plaintiff sustained injuries and damages as set forth above.

**COUNT VIII**
**Intentional Infliction of Emotional Distress**

Plaintiff realleges the above allegations as if hereinafter set forth in full and further states and alleges as follows:

84. The conduct of Defendant Officers as set forth above was extreme and outrageous.

85. Defendant Officers intentionally or recklessly engaged in such extreme and outrageous conduct.

86. As a direct result of such conduct, Plaintiff has suffered severe emotional distress.

**COUNT IX**
**Vicarious Liability of the City of St. Paul**

Plaintiff realleges the above allegations as if hereinafter set forth in full and further states and alleges as follows:

87. Defendant City of St. Paul, as an employer is liable for the state law torts of its employees, more specifically, for the committed by its employees as set forth herein.

88. As a result of these torts, committed by employees of the City of St. Paul acting within the course and scope of their duties as St. Paul Police Officers, Plaintiff suffered the damages set forth above.

**COUNT X**
**Negligent Supervision**

Plaintiff realleges the above allegations as if hereinafter set forth in full and further states and alleges as follows:

89. Prior to June 15, 1999, Defendant Scott had repeatedly demonstrated a propensity for violating the laws relating to arrest and detention of persons in the City, a propensity of which the City of St. Paul knew or should have known.

90. Defendant City of St. Paul failed to properly supervise, train and discipline its officers, including Scott. This failure amounts to negligent indifference to the rights and safety of Plaintiff and other persons within the City.

91. By failing to adequately supervise and discipline officers with propensities to effect unlawful arrests, and by failing to adequately train officers to properly identify suspects before they are arrested, Defendant City of St. Paul encouraged and implicitly authorized Defendant Scott to effect the unlawful arrest of Plaintiff, for Scott to encourage the other Defendant Officers to seize, detain, beat, mace and injure Plaintiff, and for the other Defendant Officers to seize Plaintiff without probable cause or warrant.

92. As a result of Defendant City of St. Paul's failure to adequately supervise, discipline and train Defendant Officers, Plaintiff suffered injuries and damages as set forth above.

## COUNT XI

### Punitive Damages Under Federal Law

Plaintiff realleges the above allegations as if hereinafter set forth in full and further states and alleges as follows:

93. All of the aforementioned acts, errors and omissions committed by Defendant Officers were committed in bad faith and with reckless disregard for the rights and safety of Plaintiff as well as other citizens, so as to subject Defendant Officers, and each of them, to punitive damages pursuant to the statutes and common law of the United States of America.

WHEREFORE, Plaintiff Brian Arthur Hill respectfully prays that this Court grant him the following relief:

1. Awarding compensatory damages to Plaintiff against the defendants herein, jointly and severally;
2. Award costs of this action to Plaintiff;
3. Award reasonable attorney's fees and costs to Plaintiff pursuant to 42 U.S.C. § 1988;
4. Award such other and further relief as this Court may deem appropriate.

**Plaintiff hereby demands a trial by jury on all issues so triable.**

Dated: August 12, 2001

THE LAW OFFICE OF
WAYNE J. RICE, P.A.

Wayne J. Rice
Attorney Reg. No. 227110
2104 Dupont Avenue South
Minneapolis, MN 55405
(612) 874-1552
Fax (612) 879-0059

ATTORNEY FOR PLAINTIFF
BRIAN ARTHUR HILL

# Please forward this announcement to the recipient of this fax.

# The United States District Court, District of Minnesota announces two new programs!

**Expedited Trials** –The Court will begin offering parties an opportunity to participate in a program called Expedited Trials beginning July 2, 2001. This voluntary program offers an alternative to traditional case processing by allowing for a shorter time period from filing to disposition. Discovery and motion practice will be sharply limited as a means to reduce time and expense. Procedural rules are on the Court's website at www.mnd.uscourts.gov. If you would like additional information about the Expedited Trials Program, contact one of our clerk's offices at the phone numbers listed below.

**Courtroom Technology – Phase II** – In June 2001, the District of Minnesota began upgrading, installing, and enhancing the technology available to counsel in the courtroom. The project will continue through early fall and will ultimately upgrade all Article III Judge courtrooms in St. Paul and Minneapolis. To assist counsel with this transition, the District Court is offering a hands-on class, worth one hour of CLE credit at both courthouses. Classes will be held over the lunch hour. Course registration can be done by visiting www.mnd.uscourts.gov or by calling Kristine at 612-664-5125.

## For additional information on either program please visit our website at www.mnd.uscourts.gov.

700 Federal Building
316 North Robert Street
St. Paul, MN 55101
(651) 848-1100

202 U.S. Courthouse
300 South Fourth Street
Minneapolis, MN 55415
(612) 664-5000

417 U. S. Courthouse
515 West First Street
Duluth, MN 55802
(218) 529-3500