UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Brian Arthur Hill,

Civ. File No. 01-1024 (PAM/RLE)

Plaintiff,

v.

**MEMORANDUM AND ORDER**

Patrick Scott, Catherine Pavlak, Mark Pierce, Michael Rasmussen, Jerome Steffen, all individually and in their professional capacities as St. Paul police officers; and the City of St. Paul,

Defendants.

---

This matter is before the Court on Defendants' Motion for Summary Judgment. For the reasons that follow, the Motion is granted.

**BACKGROUND**

On June 15, 1999, Plaintiff Brian Arthur Hill was arrested at his home by several officers of the St. Paul Police Department. The dispute arose when a St. Paul Parking Enforcement Officer, Michael Rasmussen, was attempting to retrieve a disabled parking permit issued to Hill's father. The permit had been reported stolen by Hill, but was being used by Hill's sister, Edna-Jo Hill. Rasmussen's request to surrender the parking permit aggravated Hill, and Rasmussen felt threatened by Hill and called in a squad car for back-up. Several officers responded, including Defendant Officer Patrick Scott, with whom Hill had prior experience, and Defendant Officers Jerome Steffen, Catherine Pavlak, and Mark Pierce.

FILED AUG 19 2002
RICHARD D. SLETTEN, CLERK
JUDGMENT ENTD AUG 19 2002
DEPUTY CLERK

Because of the history between Officer Scott and Hill, Officer Scott did not participate directly in any of the events that day. However, his indirect participation is the subject of many of Hill's allegations. After arriving at the house, Officer Scott contacted a St. Paul Police Department operator and requested a warrant check on Hill. The information Officer Scott gave the operator was that the subject was a black male in his late 20s, first name Brian, last name Hill, with a possible address of 1081 Hague. Officer Scott also informed the operator that Hill's driver's license might be suspended. Shortly thereafter, the operator reported that she had located a misdemeanor traffic warrant for no proof of insurance on a Brian Walter Hill. According to the operator, Brian Walter Hill was born on August 19, 1972, was 5' 11" and weighed 175 pounds, and had green eyes. The dispatcher did not connect Brian Walter Hill to the 1081 Hague address, and did not confirm that Brian Walter Hill was African-American.

Under St. Paul Police Department procedure, police officers have the discretion to arrest someone wanted on a traffic warrant. (Jerskey Aff. Ex. 30 § 410.) An officer may ask the person to pay the listed bail or may arrest the person. After receiving the information about Brian Walter Hill's traffic warrant, Officer Scott communicated the existence of the warrant to his fellow officers and to Hill. Hill vehemently denied having a warrant.

The Officers contend that, during the course of these events, Hill became belligerent and disorderly, refused to surrender the parking permit, and then attempted to go into his house after being ordered to remain outside the house. One of the officers shot Hill with

mace, and after a brief struggle, Hill was arrested and placed in handcuffs. Officers Pavlak and Pierce then transported Hill in their squad car to the hospital.

After Hill's arrest, Officer Scott again called the operator to verify the warrant information. At this time, he gave the operator Hill's birthdate of April 24, 1970. The operator responded that the Brian Hill with that birthdate was Brian Arthur Hill, not Brian Walter Hill, and that there were no outstanding warrants for Brian Arthur Hill. This information was communicated to Officers Pavlak and Pierce, who were in the process of transporting Hill to the hospital. Hill asked the officers to release him, but they told him that he was arrested for obstructing legal process. Hill was booked but never charged for that, or any other, offense.

Hill's Amended Complaint contains eleven Counts. He has conceded to the dismissal of five of these Counts and two of the five individual Defendants, however. His remaining claims are that: (1) Officer Scott violated 42 U.S.C. § 1983 by failing to fully verify the information he received from the dispatcher (Count I); (2) Officers Pavlak and Pierce violated § 1983 by failing to release him once they learned that he was not wanted on a warrant (Count II); (3) the three officers committed the state-law torts of false arrest (Count VII) and intentional infliction of emotional distress (Count VIII); and (4) the City is vicariously liable for the state-law torts (Count IX). The Amended Complaint also raises a claim for punitive damages under § 1983 in Count XI; however, neither party addresses this Count in their papers.

Defendants seek summary judgment, contending that they are entitled to qualified immunity on every remaining Count of the Complaint.

**DISCUSSION**

**A. Summary Judgment**

Summary judgment is proper if there are no disputed issues of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The Court must view the evidence and the inferences that may be reasonably drawn from the evidence in the light most favorable to the nonmoving party. Enter. Bank v. Magna Bank, 92 F.3d 743, 747 (8th Cir. 1996). However, as the United States Supreme Court has stated, "summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed to secure the just, speedy, and inexpensive determination of every action." Celotex Corp. v. Catrett, 477 U.S. 317, 327 (1986).

The moving party bears the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. Enter. Bank, 92 F.3d at 747. A party opposing a properly supported motion for summary judgment may not rest upon mere allegations or denials, but must set forth specific facts in the record showing that there is a genuine issue for trial. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986); Krenik v. Le Sueur, 47 F.3d 953, 957 (8th Cir. 1995). Inadmissible hearsay evidence,

however, may not be used to defeat a motion for summary judgment. Fireman's Fund Ins. Co. v. Thien, 8 F.3d 1307, 1310 (8th Cir. 1993).

**B. 42 U.S.C. § 1983**

Hill raises two claims under 42 U.S.C. § 1983, which prohibits someone acting under color of state law from depriving another of his or her "rights, privileges, or immunities secured by the Constitution and laws." There is no dispute that Defendants were acting under color of state law when they arrested and detained Hill.

However, qualified immunity will shield Defendants from suit under § 1983 if Defendants reasonably believed that their conduct was lawful "in light of clearly established law and the information possessed" by Defendants at the time of the alleged incident. Smithson v. Aldrich, 235 F.3d 1058, 1061 (8th Cir. 2000) (citing Anderson v. Creighton, 483 U.S. 635, 641 (1987)). Qualified immunity is "immunity from suit rather than a mere defense to liability." Hunter v. Bryant, 502 U.S. 224, 227 (1991). "The qualified immunity standard 'gives ample room for mistaken judgments' by protecting 'all but the plainly incompetent or those who knowingly violate the law.'" Hunter, 502 U.S. at 229 (quoting Malley v. Briggs, 475 U.S. 335, 343 (1986)).

On a motion for summary judgment, the Court undertakes a three-part inquiry to determine whether a defendant is entitled to qualified immunity. First, the plaintiff must assert a violation of a constitutional or statutory right. Second, that right must be clearly established. Third, taking the facts in the light most favorable to the plaintiff, "there must be

no genuine issues of material fact as to whether a reasonable official would have known that the alleged action violated that right." Lambert v. City of Dumas, 187 F.3d 931, 935 (8th Cir. 1999). Although an official's entitlement to qualified immunity is a question of law, if there are genuine disputes as to the facts material to the qualified immunity determination, summary judgment is not appropriate. Greiner v. City of Champlin, 27 F.3d 1346, 1352 (8th Cir.1994).

1. Count I: unlawful arrest

Count I challenges Hill's initial arrest as lacking in probable cause. According to Hill, because Officer Scott knew him well, he should have known that Hill was not the Brian Walter Hill named by the dispatcher. The salient fact, in Hill's opinion, is that the dispatcher specified that the Brian Walter Hill wanted on a warrant had green eyes.[1] Thus, Hill argues, Scott knew or should have known that Brian Walter Hill was not African-American, and Scott is not entitled to qualified immunity.

There is no dispute that if Hill's arrest lacked probable cause, it violated his Fourth Amendment rights, and that this right was clearly established at the time of Hill's arrest. See Lambert, 187 F.3d at 935. Thus, for qualified immunity purposes, the inquiry focuses on whether a reasonable officer in Officer Scott's position knew or should have known that there was no probable cause to arrest Hill. Saucier v. Katz, 533 U.S. 194, 202 (2001).

---

[1] At the hearing, counsel for Hill also implied that Officer Scott knew Hill's birthdate when he first called the operator and therefore knew that Hill was not Brian Walter Hill. There is no evidence in the record to support this assertion, however.

Hill has failed to show that questions of fact exist as to whether a reasonable officer, knowing what Officer Scott knew, would have believed that Hill was the Brian Walter Hill named by the operator. Save for the green eyes, all of the information the operator gave Officer Scott matched what he knew about Hill: age, height, and weight. Although in a perfect world the mention of green eyes might lead one to inquire further, qualified immunity protects police officers acting in the real world. The situations confronting police officers are fluid, and in this case, because of the increasing belligerence of Hill, the officers needed to act quickly on the information gathered by Officer Scott. See Graham v. Connor, 490 U.S. 386, 396-97 (1989) (noting that "allowance [must be made] for the fact that police officers are often forced to make split-second judgments–in circumstances that are tense, uncertain, and rapidly evolving"). Given the paucity of evidence Hill has adduced to support his allegations that Officer Scott knew that he did not have green eyes, the Court cannot say that Officer Scott acted "plainly incompetent[ly]" or that he "knowingly violate[d] the law." Hunter, 502 U.S. at 229. Officer Scott is entitled to qualified immunity on Hill's § 1983 false arrest claim.

2. Count II: unlawful detention

Count II seeks to hold Officers Pavlak and Pierce liable for allegedly violating Hill's constitutional rights when they refused to release him after learning that he was not wanted on a warrant. As with Officer Scott, Officers Pavlak and Pierce are entitled to qualified

immunity if reasonable officers in their position would have believed that there was probable cause to continue to detain Hill.

There is little dispute that Hill resisted arrest, and did so violently. Thus, Officers Pavlak and Pierce believed that Hill had committed a crime, namely obstruction of legal process. This belief was reasonable, and reasonable officers in the position of Officers Pavlak and Pierce would have believed that the continued detention of Hill was supported by probable cause. Officers Pavlak and Pierce are entitled to qualified immunity on this Count, and summary judgment is appropriate.

Because Hill has not raised a viable § 1983 claim, his claim in Count XI for punitive damages under federal law also fails.

**C. Count VIII: Intentional Infliction of Emotional Distress**

To prove intentional infliction of emotional distress: (1) the conduct must be extreme and outrageous; (2) the conduct must be intentional or reckless; (3) it must cause emotional distress; and (4) the distress must be severe. Hubbard v. United Press Int'l, 330 N.W.2d 428, 438-39 (Minn. 1983). The conduct at issue must be "so atrocious that it passes the boundaries of decency and is utterly intolerable to the civilized community." Hubbard, 330 N.W.2d at 439 (citing Haagenson v. Nat'l Farmers Union Prop. & Cas. Co., 277 N.W.2d 648, 652 n.3 (Minn. 1979). Summary judgment is proper when a party does not meet the high standard of proof needed for an intentional infliction of emotional distress claim. Strauss v. Thorne,

490 N.W.2d 908, 913 (Minn. Ct. App. 1992) (citing Lee v. Metro. Airport Comm'n, 428 N.W.2d 815, 823 (Minn. Ct. App. 1988)).

Hill's intentional infliction of emotional distress claim fails at the first step of the inquiry. He has failed to show that the conduct at issue was extreme and outrageous. As discussed more fully above, all of the officers acted reasonably under the circumstances, and their conduct was certainly not "so atrocious" as to "pass[] the boundaries of decency." Hubbard, 33 N.W.2d at 439. Hill has not met his burden to show outrageous conduct for the purposes of his intentional infliction of emotional distress claim.

**D. Count VII: False Arrest**

To recover on a claim for false arrest, Hill must prove that he was arrested and that his arrest was unlawful. Lundeen v. Renteria, 224 N.W.2d 132, 135 (Minn. 1974). As in the § 1983 inquiry above, Hill's arrest was unlawful if it was not supported by probable cause. Id. at 136. The Court should focus on whether the officers acted "reasonably and lawfully under the circumstances." Perkins v. St. Louis County, 397 N.W.2d 405, 408 (Minn. Ct. App. 1986).

Under Minnesota law, public officials are automatically entitled to official immunity from state-law claims when their duties require the exercise of discretion. Johnson v. Morris, 453 N.W.2d 31, 41-42 (Minn. 1990). Police officers generally are classified as discretionary officers entitled to immunity. Johnson, 453 N.W.2d at 42. A police officer is not subject to liability for the exercise of his or her duties unless the officer "is guilty of a willful or

malicious wrong." Elwood v. Rice County, 423 N.W.2d 671, 677 (Minn. 1988). Hill argues that the Officers are not entitled to official immunity for the same reasons they were not entitled to qualified immunity on his § 1983 claims.

Hill essentially concedes that his state-law claims rise and fall with his § 1983 claims. Because the Court concludes that the Officers are all entitled to qualified immunity on Hill's § 1983 claims, the Officers are likewise entitled to official immunity on his false arrest claim.

**E. Count IX: Vicarious Liability**

The parties agree that Hill's claim that the City is vicariously liable for the torts of the Officers depends entirely on the viability of Hill's tort claims. As discussed above, however, the Officers are entitled to official immunity on Hill's tort claims. Thus, there are no claims remaining for which the City may be vicariously liable, and summary judgment on this Count is appropriate.

**CONCLUSION**

Defendants are entitled to summary judgment on all remaining Counts of Plaintiff's Amended Complaint. Accordingly, for the foregoing reasons, and upon all of the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that Defendants' Motion for Summary Judgment (Clerk Doc. No. 20) is **GRANTED**.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated: August 19, 2002

Paul A. Magnuson
United States District Court Judge

# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

## CIVIL NOTICE

DATE MAILED TO COUNSEL/PRO SE PARTIES:

The purpose of this notice is to summarize the time limits for filing with the District Court Clerk's Office a Notice of Appeal to the Eighth Circuit Court of Appeals from a final decision of the District Court in a civil case.

***This is a summary only. For specific information on the time limits for filing a Notice of Appeal, review the applicable federal civil and appellate procedure rules and statutes.***

Rule 4(a) of the Federal Rules of Appellate Procedure (Fed. R. App. P.) requires that a Notice of Appeal be filed within:

1. Thirty days (60 days if the United States is a party) after the date of "entry of the judgment or order appealed from;' or

2. Thirty days (60 days if the United States is a party) after the date of entry of an order denying a timely motion for a new trial under Fed. R. Civ. P. 59; or

3. Thirty days (60 days if the United States is a party) after the date of entry of an order granting or denying a timely motion for judgment under Fed. R. Civ. P. 50(b), to amend or make Additional findings of fact under Fed. R. Civ. P. 52(b), and/or to alter or amend the judgment under Fed. R. Civ. P. 59; or

4. Fourteen days after the date on which a previously timely Notice of Appeal was filed.

If a Notice of Appeal is not timely filed, a party in a civil case can move the District Court pursuant to Fed. R. App. P. 4(a)(5) to extend the time for filing a Notice of Appeal. This motion must be filed no later than 30 days after the period for filing a Notice of Appeal expires. If the motion is filed after the period for filing a Notice of Appeal expires, the party bringing the motion must give the opposing parties notice of it. The District Court may grant the motion, but only if excusable neglect or good cause is shown for failing to file a timely Notice of Appeal.

C:\FORMS\APPEAL NO. CIV
Rev. August 11, 1995